# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISON

| | | |
|---|---|---|
| MAURICE REYNOLDS, | ) | CASE NO. 1:24-CV-1265 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| SHELBIE SMITH, WARDEN, | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent, | ) | |

## I.     Introduction

On July 3, 2024, Petitioner Maurice Reynolds ("Reynolds") filed a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF Doc. 1). Respondent Shelbie Smith, Warden, filed her Return of Writ, the state court record, and the state trial court transcripts on December 23, 2024. (ECF Docs. 7, 7-1, 8). On January 31, 2025, Reynolds filed his Traverse. (ECF Doc. 10). Respondent did not reply. This matter is therefore ripe for review.

The District Court has jurisdiction over the Petition under § 2254(a). Reynolds originally filed his Petition in the Southern District of Ohio, which transferred the case to this district on July 24, 2024. (ECF Docs. 2, 3). On September 26, 2024, under Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry of Sept. 26, 2024). For the reasons explained below, I recommend that the District Court deny Grounds One and Three of Reynolds's Petition as not cognizable and Ground Two as without merit.

## II.    Factual Background

Ohio's Eighth District Court of Appeals detailed the facts of the case on direct appeal. These factual findings are presumed correct unless Reynolds rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Eighth District Court of Appeals presented the facts as follows:

{¶ 2} On December 17, 2020, a Cuyahoga County Grand Jury indicted Reynolds on two counts of rape in violation of R.C. 2907.02(A)(1)(b), with furthermore clauses specifying that one victim was between the ages of ten and thirteen at the time of the offense; one count of kidnapping in violation of R.C. 2905.01(A)(4); two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4); two counts of endangering children in violation of R.C. 2919.22(B)(1); two counts of endangering children in violation of R.C. 2919.22(A); two counts of gross sexual imposition in violation of R.C. 2907.05(A)(5); and two counts of gross sexual imposition in violation of R.C. 2907.05(A)(1). The counts also carried a variety of specifications.

{¶ 3} Reynolds initially pleaded not guilty to the indictment.

{¶ 4} On July 22, 2021, the court held a change-of-plea hearing. The assistant prosecuting attorney placed the terms of the plea agreement on the record as follows: Reynolds would plead guilty to one count of sexual battery in violation of R.C. 2907.03(A)(5), a felony of the second degree; one count of abduction in violation of R.C. 2905.02(A)(2), a felony of the third degree; two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), felonies of the third degree; one count of endangering children in violation of R.C. 2919.22(A), a felony of the third degree; and two counts of gross sexual imposition in violation of R.C. 2907.05(A)(5), felonies of the fourth degree. The remaining counts and all specifications would be dismissed as part of the plea agreement.

{¶ 5} With respect to merger, the following exchange took place:

ASSISTANT PROSECUTING ATTORNEY ("APA"): Part of the plea is that they're non-allied offenses of similar import, but if the Court at sentencing decides that things do merge, you do have the option to decide that.

THE COURT: The state and defense will argue that at the time of
sentencing.

With respect to sexual offender registration, the assistant prosecuting attorney
stated that some of the offenses were Tier II offenses, but those would be
"overtaken" by the sexual battery offense, which was a Tier III offense. Defense
counsel confirmed that this was his understanding of the plea agreement, and the
court proceeded to engage Reynolds in a Crim.R. 11 plea colloquy.

{¶ 6} As part of the plea colloquy, the court outlined the maximum potential
penalties Reynolds faced as follows:

THE COURT: And I believe it's your intention to plead guilty to Count 1
as it's amended, amending it to a felony of the second degree, sexual
battery, in violation of 2907.03(A)(5). That would mean that you would be
a Tier III mandatory registrant, and that would mean that you would—and
I'll go through that with you, but that means that you would have to register
for your lifetime with in-person verification every 90 days. And do you
understand that?

REYNOLDS: Yes.

THE COURT: As a Tier III registrant?

REYNOLDS: Yes.

* * *

THE COURT: And under Counts 4 and 5, you would be a Tier II offender,
which means that you would have to register for a period of 25 years with
in-person verification every 180 days; however, since Count 1 is a Tier III,
that is for your lifetime. So do you understand that?

REYNOLDS: Yes.

The trial court, satisfied that Reynolds was entering a knowing, intelligent, and
voluntary plea, accepted Reynolds's guilty plea to the offenses outlined above. The
court referred Reynolds to the probation department for preparation of a
presentence-investigation report.

3

{¶ 7} On August 12, 2021, the court held a sentencing hearing. With respect to merger, the following exchange took place:

> THE COURT: All right. And before we move forward, I do believe that at the time of the plea the State and defense agreed to argue the issue of merger.

> APA: Correct, Your Honor. The plea was that the items that Mr. Reynolds pled guilty to did not merge, but we did agree that we would argue that, yes.

> THE COURT: Do you wish to argue that now?

> DEFENSE COUNSEL: Very briefly, Your Honor, GSI and sexual battery are the same act. And the endangering is the same act. And the abduction is the same act. One mens rea, one culpable mental state, one incident, one victim. Those all merge from my perspective.

> The second case, Your Honor, is a GSI and endangering for the second victim. Those would merge together, but not merge with the other victim, if you follow what I'm saying.

> THE COURT: So there's Count 4 and 5 are gross sexual imposition, and Counts 8 and 10 are gross sexual imposition.

> DEFENSE COUNSEL: Right. All the counts for the same victim from my perspective would merge, but they don't merge with the other victim because there's two separate victims.

> THE COURT: So Count 1, are you suggesting would merge with one of the gross sexual imposition counts.

> DEFENSE COUNSEL: That's correct. And abduction is part and parcel, it's no different than a rape and kidnapping. This was not where somebody was moved from one place to the other. You can't commit the act without holding the person down. That's why they always merge unless the person is in a trunk and take them to another location. It's no different than a— abduction is just a lesser included of kidnapping, and kidnappings always merge with the rape unless there's a separate animus. So that seems like a throw away it's pretty clear.

GSIs are a lesser included of the sexual battery. The endangering children, I understand that [the prosecutor] may say they don't merge because it's alleged that my client permitted the two children to consume drugs and alcohol. So if that's the endangering, then perhaps they don't merge. But if the endangering is having a sex act, then I think they would merge. And then GSIs I think all merge as to each victim.

THE COURT: So then under your argument, the defendant would only be sentenced on two counts?

DEFENSE COUNSEL: That's correct.

THE COURT: Potentially.

DEFENSE COUNSEL: Yes.

THE COURT: Then the State would elect which counts?

* * *

APA: Your Honor, just for clarity, Counts 1, 3, 4, and 5 are victim 1, so to speak. Count 7 is both victims. And Counts 8 and 10 are victim 2. All right. So Count 1, the sexual battery, for sexual conduct, the testimony would have been from that victim of oral sex, of vaginal sex, of other things such as that nature. So that's why we would argue sexual battery encompasses that kind of sexual conduct, in loco parentis, this is the victim's grandfather.

The abduction, restrained the liberty of the victim. The victim would have testified that she tried to leave the bedroom and he did not let her leave, kind of pushed her back down, put his hand over her mouth, and forced her to be quiet. This is all separate conduct we're arguing.

Counts 4 and 5 is GSI, touching vagina, Count 5, GSI touching breast. The testimony and the evidence would have been that all of these things happened separately, it all wasn't at the same time. That he took her into the bedroom, touched her vagina, touched her breasts, Count 4 and 5, separate things. And then it was oral sex and vaginal penetration, which would be Count 1, the sexual battery.

5

Like I said, the abduction would have been covering her mouth, kind of holding her down, not letting her speak and call out to her sister, who was also in the other room, and restraining her liberty in that sense.

Count 7, Your Honor, we amended to include both victims, endangering children. That would be to evidence that this defendant gave both his granddaughters alcohol and marijuana and then their drug labs came back. They also had amphetamines in their system, and one of the girls actually also had cocaine in her system. So that endangering is completely separate for all of these substances in their system.

Counts 8 and 10 is for the second victim, the other granddaughter, and the evidence would have been that he separately touched her vagina and then separately touched her breasts. So we would argue that none of these counts merge.

{¶ 8} After hearing the parties' arguments as to merger, the court found that the gross sexual imposition and sexual battery counts were not allied offenses and therefore would not merge for sentencing. The court further found that the abduction occurred simultaneously with the sexual battery and therefore those offenses would merge; the state elected sexual battery for purposes of sentencing.

{¶ 9} Defense counsel, Reynolds, and the assistant prosecuting attorney then addressed the court. The assistant prosecuting attorney also read a letter from the mother of one of the victims. The court ultimately sentenced Reynolds to a total aggregate term of 12 to 15 and one-half years. The court also imposed five years of postrelease control and classified Reynolds as a Tier III sexual offender.

*State v. Reynolds*, No. 112139, 2023 WL 7041010, *1-3 (Ohio Ct. App. Oct. 26, 2023).

## III.    State Court History

I recount Reynolds's state court procedural history below. (*See also* ECF Doc. 11).

### A.    State Conviction and Change of Plea

On December 17, 2020, the Cuyahoga County Grand Jury indicted Reynolds on thirteen

counts, including: Counts One and Two of rape, an unspecified felony, under Ohio Revised Code

§ 2907.02(A)(1)(b), with a Notice of Prior Conviction under O.R.C. § 2929.13(F)(6), and Repeat

Violent Offender ("RVO") Specification under O.R.C. § 2941.149(A); Count Three of
kidnapping, a felony of the first degree, under O.R.C.§ 2905.01(A)(4), with an RVO
specification under O.R.C. § 2941.149(A), sexual motivation specification under O.R.C.
§ 2941.147(A), and sexually violent predator specification under O.R.C. § 2941.148(A); Counts
Four and Five of gross sexual imposition under O.R.C. § 2907.05(A)(4), a felony of the third
degree, both with sexually violent predator specifications under O.R.C. § 2941.148(A); Counts
Six and Twelve of endangering children, a felony of the second degree, under O.R.C. §
2919.22(B)(1), with a notice of prior conviction under O.R.C. § 2929.13(F)(6) and a RVO
specification under O.R.C. § 2941.149(A); Counts Seven and Thirteen of endangering children, a
felony of the third degree, under O.R.C. § 2919.22(A), with a notice of prior conviction under
O.R.C. § 2929.13(F)(6) and a RVO specification under O.R.C. § 2941.149(A); Counts Eight,
Nine, Ten, and Eleven of gross sexual imposition, felonies of the fourth degree, under O.R.C.
§§ 2097.05(A)(1) and (A)(5), all with sexually violent predator specifications under O.R.C.
§ 2941.148(A). (ECF Doc. 7-1, pp. 3-13).

On December 22, 2020, Reynolds pled not guilty to the indictment. (*Id.* at p. 14). On
March 24, 2021, Reynolds waived his speedy trial rights from March 24, 2021 through July 19,
2021 in writing and in open court. (*Id.* at pp. 15-16).

On July 22, 2021, Reynolds changed his plea to guilty in exchange for reduced charges:
Count One was amended to sexual battery, a second degree felony, under O.R.C.
§ 2907.03(A)(5) and all related specifications were removed; Count Three was amended to
abduction, a felony of the third degree, under O.R.C. § 2905.02(A)(2) and all related
specifications were removed; Counts Four, Five, and Seven had the specifications removed;
Count Seven was amended to include the victim from Count Eight. (*Id.* at p. 17). Counts Two,

Six, Nine, Eleven, Twelve, and Thirteen were nolled. (*Id.*). The state court accepted Reynolds's guilty plea. (*Id.*). The state court advised Reynolds of the Tier I sex offender classification as to Counts Eight and Ten; Tier II sex offender classification as to Counts Four and Five; and Tier III sex offender classification as to Count One. (*Id.*). He was also advised on the Reagan Tokes law as it applied to Count One and advised that the sentence is a qualifying offense subject to an indefinite sentence with a minimum and maximum term, as well as the maximum sentence that could be imposed. (*Id.* at pp. 17-18). Reynolds's defense counsel objected to the application of the Reagan Tokes Law. (*Id.* at p. 18). Reynolds was also advised of the five-year mandatory post-release control as to Counts One, Four, Five, Eight, and Ten. (*Id.*).

Sentencing was held on August 12, 2021. (*Id.* at pp. 19-22). The state court imposed a minimum prison sentence of 12 years and a maximum sentence of 15 years, and 6 months on the underlying offenses, given that the sentence on Count One was subject to the Reagan Tokes Law. (*Id.* at p. 19). The court held a hearing on the issue of merger and found, over defense's objection, that Count Three merged into Count One, and that none of the other counts merged for sentencing purposes. (*Id.*). The sentence was imposed as follows: Count One: 7-year prison term; Count Three: merged into Count One; Count Four: 2-year prison term; Count Five: 2-year prison term; Count Seven: 2-year prison term; Count Eight: 1-year prison term; and Count Ten: 1-year prison term. (*Id.* at pp. 19-20). Counts Four and Five ran concurrent to each other; Counts Eight and Ten ran concurrent to each other; Count One ran concurrently to Counts Four, Five, Seven, Eight, and Ten. (*Id.* at p. 20). Reynolds received jail time credit of 247 days. (*Id.*). Reynolds was advised of a three-year mandatory post-release control for Count Seven, and a five-year mandatory post-release control for Counts One, Four, Five, Eight, and Ten. (*Id.*).

**B.      Direct Appeal**

Reynolds moved for leave to file a delayed appeal in the Eighth District Court of Appeals

on November 18, 2022. (ECF Doc. 7-1, pp. 23-39). The court granted Reynolds leave to file his

appeal on December 5, 2022. (*Id.* at p. 40). Reynolds filed his appellant's brief on March 24,

2023. (*Id.* at pp. 41-58). In it, he raised the next two assignments of error:

1.      The trial court erred when it failed to merge Counts 1, 4 and 5. These were allied
        offenses of similar import.

2.      The trial court erred when it provided confusing and inconsistent advice on points
        of law. These errors made Reynolds plea unknowing, involuntary, and
        unintelligent.

(*Id.* at p. 46). The State replied on May 3, 2023. (*Id.* at pp. 59-73). On October 26, 2023, the

Eighth District Court of Appeals affirmed both assignments of error and affirmed the trial court

court's judgment. (*Id.* at pp. 74-86; *see also Reynolds*, 2023 WL 7041010).

On December 6, 2023, Reynolds, now acting pro se, filed a timely notice of appeal in the

Ohio Supreme Court. (ECF Doc. 7-1, pp. 87-113). On February 20, 2024, the Ohio Supreme

Court declined to accept jurisdiction of the appeal under Supreme Court Practice Rule

7.08(B)(4). (*Id.* at p. 114; *see also State v. Reynolds*, 227 N.E.3d 1264 (Ohio 2024) (table)).

Reynolds filed no further appeals.

**IV.    Federal Habeas Corpus Petition**

Reynolds brings three grounds for relief. (ECF Doc. 1).

I.      The trial court erred when it failed to merge Counts 1, 4, and 5. These were
        allied offenses of similar import.
        Supporting Facts:
        The incident took place on the same day with the same victim. The record
        did not develop how far in time the sexual conduct was from the touching
        of the breast and vagina.

II.     The Petitioner's guilty plea was not knowingly, voluntarily, or intelligently
        give[n] where The trial court provided confusing and inconsistent advice on

points of law. These errors made Petitioner's plea unknowing, involuntary, and unintelligent.

Supporting Facts:

There were three instances where the trial court gave unintelligent advice that no reasonable person could expect to understand, and as a result, Petitioner would not have entered his guilty plea, under the totality of the circumstances if he had been given accurate information[.]

III.    The Court of Appeals violated Petitioner's constitutional right to due process and equal protection of the law where it treated petitioner differently from others similarly situated individuals and failed to apply the law equally in review of his allied offense of similar import issue, thereby treating him differently in violation of the equal protection clause of the fourteenth amendment.

Supporting Facts:

The state court failed to apply the allied offense of similar import law equally to him as applied to other individuals.

(ECF Doc. 1, p. 7).

## V.    Federal Habeas Corpus Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104-132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), applies to Marshall's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This is so because "[s]tate courts are adequate forums for the vindication of federal rights" and AEDPA thus acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). As such, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United

10

States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181, quoting 28 U.S.C. §§ 2254(a), (b), (c). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application shall not be granted . . . unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181.

First, clearly established federal law for purposes of AEDPA review includes "the holdings, as opposed to dicta, of [U.S. Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to U.S. Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court despite both cases having materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). However, a state court does not act contrary to clearly established federal law where U.S. Supreme Court precedent is ambiguous or otherwise unavailable. *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is an unreasonable application of Supreme Court precedent where the state court's adjudication was "objectively unreasonable" and not merely erroneous or

11

incorrect. *Williams*, 529 U.S. at 409-11; see also *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). Under § 2254(d)(2), a state court's factual determination will stand unless it is objectively unreasonable in light of the evidence presented in state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

Next, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). And, as the U.S. Supreme Court has repeated, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Federal courts must also defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

In all, federal habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems," and is different in kind from the relief available in direct appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (internal quotation omitted). Thus, to obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de

novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) ("When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

## VI.     Procedural Barriers to Federal Habeas Corpus Review

Before coming to federal court, a state habeas petitioner must overcome certain procedural barriers, including exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). A federal court sitting in habeas review may review claims that were evaluated on the merits by the state court. But claims that were not evaluated by a state court, either because they were never fully presented to the state court (*i.e.*, state court remedies were unexhausted) or because they were not properly presented to the state court (*i.e.*, they are procedurally defaulted) are unavailable for federal habeas corpus review. *Bonnell v. Mitchell*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007).

### A.     Exhaustion

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate the same facts; the state court must have been called on to apply the legal principles of the claim now presented to the federal courts. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

The petitioner also must have presented their "claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Williams*, 460 F.3d at 807 (quotation marks omitted). In this Circuit, this can be done in one of four ways:

    (1) reliance upon federal cases employing constitutional analysis;

    (2) reliance upon state cases employing federal constitutional analysis;

    (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

    (4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (paragraph breaks added).

Failure to exhaust occurs where state court remedies are still "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). This failure to exhaust can also lead to a petitioner procedurally defaulting his claims. If the petitioner has not fully utilized his state remedies and has no legal way to do so now, the claim he failed to present is procedurally defaulted, and this Court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).

## B.    Procedural Default

The procedural default doctrine limits federal review if the petitioner has failed to follow the state's procedural requirements for presenting his or her claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, a federal habeas court will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and

is adequate to support the judgement.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quotation marks omitted).

This Circuit consults a four-part test to determine whether a petitioner has procedurally defaulted a claim. A petitioner procedurally defaults a claim if: (1) the petitioner fails to meet a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Because the procedural-default bar to federal habeas review is harsh, courts have created safety-valves to permit review in limited circumstances. A petitioner can obtain review of procedurally defaulted claims if he or she shows: (1) "cause," *i.e.*, that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.*, that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation hadn't occurred. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012). A petitioner can also obtain review of a procedurally defaulted claim if the procedurally defaulted claim is based on new evidence that the petitioner was factually innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency."; *Bousley v. United States*, 523 U.S. 614, 623

15

(1998). To overcome procedural default, an actual innocence claim must be supported by "new

reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## VII.  Discussion

### A.    Ground One is not cognizable in federal habeas corpus review.

Reynolds raises as his first ground for relief that the trial court erred when it failed to

merge Counts 1, 4, and 5, because they were allied offenses of similar import. (ECF Doc. 1, p.

7). He explains that the incident at issue took place on the same day with the same victim, and

that the record did not develop the length of time between the acts. (*Id.*). As a result, he asserts,

they should have merged under O.R.C. § 2941.25. (ECF Doc. 10, pp. 4-5).

Respondent counters that Reynolds raises error only on state law grounds, which leaves

federal habeas corpus relief unavailable to him. (ECF Doc. 7, p. 13 ("federal habeas corpus is

available only on behalf of a person in custody in violation of the Constitution or laws or treaties

of the United States." (collecting cases) and "a federal court may not issue a writ of habeas

corpus 'on the basis of a perceived error of state law.'"), quoting *Pulley v. Harris*, 465 U.S. 37,

41 (1984)). In short, "[t]he computation of a prisoner's term involves a matter of state law that is

not cognizable in § 2254 proceedings." (ECF Doc. 7, p. 13).

Respondent correctly identifies the issue here. Reynolds's argument that Counts One,

Four and Five should have merged is not cognizable in federal habeas corpus.

Federal habeas relief is only available for *federal* constitutional violations. 28 U.S.C.

§ 2254(a). Thus, "errors in application of state law are usually not cognizable in federal habeas

corpus." *Bey v. Bagley*, 500 F.3d 514, 519, (6th Cir. 2007). This is because "it is not the province

of a federal habeas court to reexamine state court determinations on state law questions." *Estelle

v. McGuire,* 502 U.S. 62, 67-68 (1991). A claim that alleges only errors of state law is cognizable

only to the extent that the "error amounts to a fundamental miscarriage of justice or a violation of the right to due process." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008).

Reynolds does not raise constitutional error on Ground One. (*See* ECF Doc. 1, p. 7 *and* ECF Doc. 10, pp. 5-6). Rather, he relies on the application of Ohio law to his sentence, and asserts that Ohio's allied offenses of similar import statute – O.R.C. § 2941.45 – was misapplied by the trial court when it declined to merge Counts One, Four, and Five. (*See id.*). He does not raise issues in Ground One that would rise to the level of a fundamental miscarriage of justice, or that his due process rights were violated as a result.

I therefore recommend the District Court deny Ground One as not cognizable.

**B.    Ground Three is likewise not cognizable in federal habeas corpus review.**

Combined with his argument as to Ground One, Reynolds argues the state appellate court misapplied the merger statute and violated the Due Process and Equal Protection clauses of the Fourteenth Amendment. (ECF Doc. 10, pp. 4-6). He prefaces his argument by stating that the state court of appeals "treated Petitioner differently from others similar[ly] situated and failed to apply the law equally in review of the allied offenses of similar import issue, thereby treating him differently and violating the Equal Protection clause of the Fourteenth Amendment to the United States Constitution." (*Id.* at p. 4). He asserts that habeas relief is available because the state appellate court's error subjected him to a "'fundamentally unfair' criminal process." (*Id.* at p. 4, citing *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)).

While Reynolds approaches cognizability by asserting he had a fundamentally unfair criminal process in the state appellate court, he still does not raise error in a manner that would afford him federal habeas corpus relief.

Reynolds correctly argues that "[h]abeas relief may be available if an alleged error of state law subjected the petitioner to a 'fundamentally unfair' criminal process." (ECF Doc. 10, p.

4, quoting *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)). But he is also correct in stating that "the category of infractions that violate fundamental fairness is defined very narrowly." (ECF Doc. 10, p. 4, quoting *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007)). Unfortunately, he has not shown how the Ohio appellate court's application of its allied offense statute to him falls within this "narrow" category in a way that would violate his equal protection rights. (*See* ECF Doc. 10, pp. 4-6).

As for merger, the Ohio Court of Appeals provided the following:

{¶ 11} In his first assignment of error, Reynolds argues that the court erred when it declined to merge Counts 1, 4, and 5. Reynolds argues that because the sexual battery and gross sexual imposition counts were all part of the same act against the same victim, and they all occurred at the same time, they should have merged.

{¶ 12} R.C. 2941.25 provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 13} Generally, we review de novo whether certain offenses should be merged as allied offenses under R.C. 2941.25. *State v. Bailey*, Slip Opinion No. 2022-Ohio-4407, ¶ 6, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 1. "Although determining whether R.C. 2941.25 has been properly applied is a legal question, it necessarily turns on an analysis of the facts, which can lead to exceedingly fine distinctions." *Id.* at ¶ 11. Specifically, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, we consider three questions: " " '(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? (3) Were they committed with separate animus or motivation?" ' " *Bailey* at ¶ 10, quoting *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. If the answer to any of these questions is yes, separate convictions are permitted. *Id.*

{¶ 14} Relevant to this assignment of error, Reynolds was convicted of sexual battery in violation of R.C. 2907.03(A)(5) and gross sexual imposition in violation of R.C. 2907.05(A)(4). R.C. 2907.03(A)(5), sexual battery, provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * the offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person." R.C. 2907.05(A)(4), gross sexual imposition, provides that "[n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more persons to have sexual contact when the other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶ 15} Reynolds argues that with respect to the conduct constituting Counts 1, 4, and 5 — oral sex and vaginal sex, touching the victim's breast, and touching the victim's vagina — the record was not developed enough to determine how far apart in time these acts occurred. The state argues that their recitation of the facts established that these acts took place at different times.

{¶ 16} A court's merger analysis takes place as part of the sentencing process, which "is less exacting than the process of establishing guilt." *State v. Garvin*, 8th Dist. Cuyahoga No. 100165, 2014-Ohio-1726, ¶ 14, quoting *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 14, citing *Nichols v. United States*, 511 U.S. 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). "Therefore, this process can easily be satisfied by a brief recitation of facts or circumstances by the prosecutor to aid the trial court in its determination," and "[n]othing more should be required." *Id.*

{¶ 17} Moreover, regardless of the length of time separating the various acts, the fact that each offense involved a different sexual act precludes merger. *State v. Wilk*, 8th Dist. Cuyahoga No. 110751, 2022-Ohio-1840, ¶ 68. This court has consistently held that "[s]eparate sexual acts are separate and distinct crimes and are not allied offenses." *Id.*, citing *State v. McSwain*, 8th Dist. Cuyahoga No. 105451, 2017-Ohio-8489, ¶ 45, citing *State v. Nicholas*, 66 Ohio St.3d 431, 435, 613 N.E.2d 225 (1993).

{¶ 18} Therefore, the trial court did not err when it declined to merge Counts 1, 4, and 5 for sentencing because they are not allied offenses of similar import. Reynolds's first assignment of error is overruled.

*Reynolds*, 2023 WL 7041010, *4-5.

The state appellate court concluded, on state law grounds, and against Reynolds's contentions otherwise, that consistently and "regardless of the length of time separating the various acts, the fact that each offense involved a different sexual act precludes merger." *Id.*

19

When evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal event, "a federal court is bound by a state court's construction of that state's own statutes." *Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013). Thus, "once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination." *Id.* This confirms the United States Supreme Court's repeated holding that "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam). Adding to this deference, the Supreme Court has affirmed that "preventing and dealing with crime is much more the business of the States than it is of the Federal Government, and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States." *Patterson v. New York*, 432 U.S. 197, 201 (1977). A state's powers to control crime includes the ability to regulate its own laws, unless it runs afoul of the Due Process Clause by "offend[ing] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 201-02 (collecting cases).

Reynolds asserts primarily an Equal Protection argument, raising error with the state appellate court's application of Ohio's merger statute, claiming that it unequally applied the law in his case in violation of the Fourteenth Amendment. (ECF Doc. 10, p. 4). He also passingly references violation of his Due Process rights. (*Id.*). Despite this contention, Reynolds does not clarify how the state court violated his constitutional rights, how merger under Ohio law was applied differently to him than to others, or how he was otherwise subjected a fundamentally unfair process. (*See id.* at pp. 4-6). With this, therefore, the Ohio state courts' determination of the application of Ohio's merger statute to Reynolds's sentence receives significant deference in this Court's review. *See Patterson*, 432 U.S. at 201.

20

Eligibility for federal habeas corpus relief on a claim adjudicated on the merits requires the petitioner to demonstrate that the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "The habeas statute "unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). While Reynolds contends that he was subjected to a fundamentally unfair process in the way the Ohio appellate court affirmed his sentence, he has not shown that he was denied his Due Process or Equal Protection rights under the Fourteenth Amendment. (*See generally* ECF Docs. 1, 10). His bare citations to Sixth Circuit precedent on fundamentally unfair criminal processes affords him no solace here.

I therefore am still bound by the state court's determination, defer to it, and determine that Ground Three is not cognizable on federal habeas corpus review. I therefore recommend the District Court deny Ground Three as not cognizable.

## C.    Ground Two lacks merit.

Reynolds states that his guilty plea was not knowingly, voluntarily, or intelligently given because the trial court provided confusing and inconsistent advice on points of law. (ECF Doc. 1, p. 7). He explains that the trial court's Criminal Rule 11 colloquy was unintelligible, including the explanation of his sexual offender registration requirements. (ECF Doc. 10, p. 7). Next, Reynolds asserts that the trial court "muddied the waters" when describing the terms of his post-release control. (*Id.*). And finally, Reynolds states that the trial court added to his confusion that if he pleaded guilty, the court could proceed directly to sentencing. (*Id.*).

Respondent argues that the Ohio appellate court appropriately considered whether Reynolds's guilty plea was unknowing and unintelligent, and correctly applied Ohio law when finding that it was knowingly, intelligently, and voluntarily made. (ECF Doc. 7, pp. 22-24). As the Warden points out, the state trial court provided correct statements of the law when informing Reynolds of his rights. (*Id.* at pp. 24-25). Reynolds did not then express confusion as to his plea or its consequences, even when the trial court expressly and repeatedly gave him the opportunity to respond. (*Id.* at pp. 25-26). Respondent points out that Reynolds's counsel confirmed that Reynolds entered his plea knowingly, intelligently, and voluntarily, without any coercion, threats, or promises. (*Id.* at p. 26, citing ECF Doc. 8-1, p. 15). Based on this, Respondent affirmed that the state court should receive AEDPA deference, as Reynolds has not shown that the state court determination was clearly contrary to or an unreasonable determination of United States Supreme Court precedent. (ECF Doc. 7, pp. 26-27).

When a defendant waives their constitutional rights by entering a guilty plea, the plea "not only must be voluntary but must be [a] knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748 (1970). Thus, after entering a guilty plea, "a defendant may only attack the court's jurisdiction and the voluntary and intelligent character of the plea itself." *Werth v. Bell,* 692 F.3d 486 (6th Cir. 2012). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights . . . . He may only attack the voluntary and intelligent character of the guilty plea . . ." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). [1]

_____

[1] The Supreme Court clarified its post-*Tollett* decisions "to make clear that a plea of guilty does not bar the review in habeas corpus proceedings of all claims involving constitutional violations

A defendant's solemn declaration in open court of their understanding receives a strong presumption of truthfulness. *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977).

Federal courts review the validity of a guilty plea based on the totality of the circumstances. *Garcia v. Johnson,* 991 F.2d 324, 327 (6th Cir. 1993); *see also Brady*, 397 U.S. at 749. When a habeas petitioner challenges the validity of his plea, "the state generally satisfies its burden by producing a transcript of the state court proceeding." *Garcia*, 991 F.2d at 326. Moreover, the state court's factual finding that the plea was proper is given a presumption of correctness unless the transcript reveals otherwise. *See Garcia,* 991 F.2d at 326-27 *and* 28 U.S.C. § 2254(e)(1). A court is required to obtain explicit waiver of certain constitutional rights, *see Boykin*, 395 U.S. 238, 243-44 (1969), but need not explain unambiguous terms, *McAdoo v. Elo*, 365 F.3d 487, 497 (6th Cir. 2004). A state court's determination is not unreasonable where a transcript reflects a proper plea colloquy and the petitioner knowingly, intelligently, and voluntarily pleaded guilty and waived his trial rights. *See, e.g.*, *United States v. Carson*, 32 F.4th 615, 622 (6th Cir. 2022).

Here, when obtaining Reynolds's guilty plea, the state court confirmed that Reynolds understood the proceedings and received adequate counsel, (ECF Doc. 8-1, p. 16), confirmed that he understood he was waiving certain rights by pleading guilty, (*Id.* at p. 17), including the right to trial, the right to confront witnesses, that the state must prove him guilty beyond a reasonable doubt, and the right not to testify against himself, (*Id.* at p. 18). Reynolds confirmed that he understood at each point. (*Id.* at pp. 16-18). The state court also confirmed that it could

---

antecedent to a plea of guilty. A defendant who pleads guilty may seek to set aside a conviction based on prior constitutional claims which challenge 'the very power of the State to bring the defendant into court to answer the charge against him.'" *Haring v. Prosise*, 462 U.S. 306, 320 (1983), quoting *Blackledge v. Perry*, 417 U.S. 21, 30 (1974). Reynolds does not raise such a challenge here.

proceed to judgment and sentencing, and reviewed the amended indictments he was about to plead guilty, as well as the potential punishments associated with the amendments, including sexual offender registration requirements. (*Id.* at pp. 19-26). The court also informed Reynolds of post-release control. (*Id.* at pp. 27-28). The state court ended its colloquy stating that it was "satisfied that the defendant has been informed of his constitutional rights, and he understands the nature of the charges, the effect of a plea, and the maximum penalties which may be imposed. The Court further finds that the defendant's plea will be made knowingly, intelligently, and voluntarily." (*Id.* at pp. 28-29). Reynolds responded that he understood, and the state court repeated these findings before proceeding to accepting his guilty plea. (*Id.* at pp. 29-30).

On review, the Eighth District Court of Appeals considered the above accordingly:

{¶ 21} Reynolds asserts that three separate aspects of the court's Crim.R. 11 colloquy rendered his guilty plea unknowing, unintelligent, and involuntary, because the court provided unintelligible advice. First, Reynolds points to the trial court's statements regarding his sexual offender registration requirements. The trial court informed Reynolds that pleading guilty to Count 1 meant that Reynolds would have to register as a Tier III sexual offender every 90 days for the rest of his life. Reynolds confirmed that he understood this. The trial court separately informed Reynolds that Counts 4 and 5 were Tier II offenses and therefore had different registration requirements, and Counts 8 and 10 were Tier I offenses that also had different registration requirements. Reynolds confirmed that he understood his registration requirements.

{¶ 22} Next, Reynolds asserts that the trial court "muddied the waters" regarding the terms of his postrelease control when it explained again that different offenses involved different terms of mandatory postrelease control. Our review of the record shows that the trial court accurately informed Reynolds that his sentence would include a mandatory five-year period of postrelease control, and Reynolds again confirmed that he understood this.

{¶ 23} Finally, Reynolds argues that the trial court added to his confusion by stating that if Reynolds pleaded guilty, the court could proceed directly to sentencing. This is accurate information, and Reynolds has failed to identify how exactly this statement violated Crim.R. 11.

{¶ 24} Because none of these instances reflect a failure to comply with Crim.R. 11, we cannot conclude that Reynolds's plea was somehow unknowing, unintelligent,

or involuntary. The trial court engaged Reynolds in a thorough and complete Crim.R. 11 colloquy, and Reynolds repeatedly confirmed to the court that he understood the consequences of pleading guilty. Therefore, Reynolds's second assignment of error is overruled.

*Reynolds*, 2023 WL 7041010, at *5-6.

The state has satisfied its burden and provided a transcript of the state court proceedings. *Garcia*, 991 F.2d at 326. Based on my review of the transcript, and the totality of the circumstances, I see no constitutional error. *Garcia*, 991 F.2d at 327; *Brady*, 397 U.S. at 749. The transcript reflects that Reynolds knowingly, intelligently, and voluntarily pleaded guilty, after the state court properly informed him of his constitutional rights. Thus, I see no reason to overturn the presumption of correctness afforded the state court's factual finding that Reynolds's plea was proper. *See Garcia*, 991 F.2d at 326-27 and 28 U.S.C. § 2254(e)(1).

I therefore recommend the District Court deny Ground Two as without merit.

**VIII.  Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a § 2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

As discussed above, Reynolds's first and third ground for relief related to merger of his state sentence are not cognizable in this Court, because they deal solely with issues of state law or do not contain sufficiently specific allegations to reasonably state a valid federal claim.

Moreover, after reviewing the state court transcript, his second ground for relief related to his guilty plea does not demonstrate that it was not knowingly, intelligently, or voluntarily made. Thus, if the District Court accepts my recommendations, Reynolds will not be able to show that my conclusions in this Report and Recommendation are debatable. I therefore recommend that no certificate of appealability issue in this case.

## IX.    Recommendation

For these reasons, I recommend denying Grounds One and Three as not cognizable and Ground Two as without merit. I further recommend that Reynolds be denied a certificate of appealability.

Dated: April 8, 2025

Reuben J. Sheperd
United States Magistrate Judge

---

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entire report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).